**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20009,

      Plaintiff,

      v.

U.S. CUSTOMS AND BORDER PROTECTION,
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20229

      Defendant.

Civ. Action No. 1:19-cv-689

---

**COMPLAINT FOR INJUNCTIVE RELIEF**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel disclosure of records requested by Plaintiff Electronic Privacy Information Center ("EPIC") from Defendant Customs and Border Protection ("CBP"), a subcomponent of the U.S. Department of Homeland Security ("DHS").

2.      EPIC seeks the release of all records concerning the creation and modification of CBP's "Biometric Exit Frequently Asked Questions (FAQs)" webpage up to and including the changes posted on December 3, 2018; and all records concerning the "alternative procedures" described in CBP's "Biometric Exit Frequently Asked Questions (FAQs)" webpage. In this Complaint, EPIC challenges (1) CBP's failure to make a timely decision about EPIC's FOIA Request; and (2) CBP's failure to release records responsive to EPIC's FOIA Request. EPIC seeks injunctive and other appropriate relief.

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 5

U.S.C. §§ 552(a)(6)(E)(iii), (a)(4)(B). This Court has personal jurisdiction over Defendant CBP.

4.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

5.      Plaintiff EPIC is a nonprofit organization, incorporated in Washington, D.C. EPIC was

established in 1994 to focus public attention on emerging privacy and civil liberties issues. EPIC

pursues public education, government oversight, and analysis of activities that impact privacy,

free expression, and democratic values in the information age.[1] EPIC's Advisory Board includes

distinguished experts in law, technology, and public policy.

6.      EPIC maintains one of the most popular privacy websites in the world, https://epic.org,

which provides EPIC's members and the public with access to information about emerging

privacy and civil liberties issues. EPIC has a robust FOIA practice and routinely disseminates

information obtained under the FOIA to the public through the EPIC website, EPIC biweekly

newsletter the *EPIC Alert*, and various news organizations. EPIC is a representative of the news

media. *EPIC v. Dep't of Def.*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

7.      Defendant Customs and Border Protection is a federal agency within the meaning of the

FOIA, 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C.

## Facts

8.      Each year, hundreds of millions of individuals travel through the air, land, and sea ports

of the United States.[2] In Fiscal Year 2017, U.S. Customs and Border Protection ("CBP") officers

---

[1] *See* EPIC, *About EPIC* (2018), https://epic.org/epic/about.html.
[2] U.S. Customs & Border Prot., CBP Trade and Travel Fiscal Year 2017 Report 1 (2018),
https://www.cbp.gov/sites/default/files/assets/documents/2018-Feb/CBP-FY17-Trade-and-Travel-Report-
Final.pdf.

processed 397.2 million travelers.[3] Over 124.2 million of these travelers were processed at airports.[4]

9.     Since 2016, CBP has deployed biometric facial recognition technology in airports across the country as part of the Biometric Entry-Exit program, capturing the unique facial images of travelers, storing those digitized records in databases, and subjecting travelers to substantial privacy risks as a condition of travel.[5]

10.    In June 2016, CBP implemented the first biometric exit pilot program—the Departure Information System Test ("DIST")—to assess whether facial recognition technology could confirm an individual's exit from the United States.[6] CBP piloted the DIST at Hartsfield-Jackson Atlanta International Airport, limiting its test to only one route and a two-month test window.[7]

11.    According to the CBP:

> CBP placed a CBP-manned camera and tablet computer between the boarding pass reader and the aircraft. As travelers checked in for their flight, CBP used passenger manifest data from the Advance Passenger Information System (APIS) and generated biometric templates from existing traveler photographs, which had been assembled on the tablet prior to boarding. As travelers passed through the boarding area, the camera took their photographs. CBP compared the real-time photographs with the expected travelers' downloaded biometric (photo) templates downloaded from the Automated Targeting System-Unified Passenger (ATS-UPAX), to determine if CBP systems could accurately match live photographs with previously-acquired photos of the same traveler. CBP created no exit records

---

[3] *Id.*

[4] *Id.*

[5] Letter from Sens. Edward J. Markey and Mike Lee to Sec'y Kirstjen Nielson, Dep't of Homeland Sec., 2 (Dec. 21, 2017), https://www.markey.senate.gov/imo/media/doc/DHS%20Biometrics%20Markey%20Lee%20letter.pdf ("American citizens should not have to choose between travelling internationally and ensuring the security of their personal data.").

[6] U.S. Dep't of Homeland Sec., DHS/CBP/PIA-056, *Privacy Impact Assessment for the Traveler Verification Service* 2 (2018), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp030-tvs-november2018_2.pdf [hereinafter *Traveler Verification Service PIA*].

[7] *Id.*

but simply used the pilot to assess these matching capabilities. CBP stored the images on the tablet for the duration of the flight and then purged the photos.[8]

12.     In December 2016, CBP supplemented the DIST with the Departure Verification System ("DVS").[9] CBP used the DVS to "biometrically confirm each traveler's departure from the United States and to create an exit record in the traveler's crossing history."[10] CBP only offered alternative screening procedures if the DVS failed to find a biometric match.[11] In such instances, a CBP officer verified the traveler's identity by capturing the traveler's biometric fingerprint identifiers and querying the prints through the Automated Biometric Identification System ("IDENT"), or by manually inspecting the traveler's travel documents.[12]

13.     In a 2016 Privacy Impact Assessment for the DVS, Department of Homeland Security ("DHS") acknowledged that DVS poses a privacy risk because "individuals cannot opt-out of participation in DVS and the creation of a CBP exit record," nor could this privacy risk be mitigated because "the only opportunity to opt-out of this program is to decline to travel."[13]

14.     In 2017, CBP operationalized the biometric process piloted under the DIST and DVS, rebranding it as the Traveler Verification Service ("TVS").[14] The TVS uses biographic APIS

---

[8] U.S. Dep't of Homeland Sec., DHS/CBP/PIA-030, *Privacy Impact Assessment for the Departure Information Systems Test* 4 (2016) (footnotes omitted), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-dis%20test-june2016.pdf.
[9] U.S. Dep't of Homeland Sec., DHS/CBP/PIA-030(a), *Privacy Impact Assessment for the Departure Verification System* 2 (2016), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-030-a-dvs-december2016.pdf [hereinafter *Departure Verification System PIA*].
[10] *Traveler Verification Service PIA*, *supra* note 6, at 2–3.
[11] *Id.* at 3.
[12] *Id.*
[13] *Departure Verification System PIA, supra* note 9, at 6.
[14] *Traveler Verification Service PIA*, *supra* note 6, at 3.

manifest data and pre-existing photographs of U.S. citizens and non-citizens boarding

international flights to compile biometric templates of the travelers, known as a "gallery."[15]

15.     Pre-existing photographs may be obtained from CBP, DHS, or the State Department,

including "photographs captured by CBP during previous entry inspection, photographs from

U.S. passports and U.S. visas," or by DHS during "apprehensions or enforcement actions,

previous border crossings, and immigration records."[16]

16.     CBP uses these galleries to "confirm the identity of the traveler, create an exit record, and

biometrically confirm the exit of in-scope non-U.S. citizens."[17] Before boarding an aircraft, a

camera connected to CBP's cloud-based TVS facial matching service captures the traveler's

photograph.[18] These cameras may be owned by CBP, airline carriers, or other government

agencies.[19] The TVS then compares and attempts to match the traveler's photograph with

biometric templates in the traveler's gallery.[20]

17.     Recognizing the privacy risks associated with the use of facial recognition technology,

CBP has stated explicitly that travelers may opt-out of the collection of their facial images with

"alternative screening procedures."

18.     However, CBP has modified the descriptions of alternative screening procedures multiple

times on the agency's "Biometric Exit Frequently Asked Questions (FAQs)" webpage and in the

agency's Privacy Impact Assessments. The agency's changes to the alternative screening

procedures have made it more difficult for U.S. travelers to opt-out of the collection of their

---

[15] *Id.* at 4.

[16] *Id.* at 4 & n.16, 15. In situations where CBP does not have advance passenger information, such as pedestrian or vehicular border crossings at land ports of entry, CBP compiles galleries using photographs of "frequent" travelers for that specific port of entry. *Id.* at 5.

[17] *Biometric Air Exit*, U.S. Customs & Border Protection, *available at* https://web.archive.org/web/20180609190430/cbp.gov/travel/biometrics/air-exit.

[18] *Traveler Verification Service PIA*, *supra* note 6, at 5.

[19] *Id.* at 6–8.

[20] *Id.* at 6.

facial image and exercise their rights to alternative screening—i.e. a manual check of the traveler's identification documents.

19.     The 2017 Privacy Impact Assessment ("PIA") of the TVS clearly states that if the identity of a traveler cannot be verified automatically, a CBP Officer will manually process the traveler by verifying the authenticity of the traveler's documentation and that the traveler matches the documentation.[21]

20.     Since the publication of the straightforward description of the alternative screening procedure in the 2017 PIA, CBP has modified the description of "alternative screening procedures" to greatly reduce the opportunity for U.S. travelers' to avoid facial recognition and choose a manual check of their identification documents.

21.     For example, the DHS's most recent PIA states that "U.S. citizens who do not wish to submit to facial photo capture pursuant to these processes may request alternative processing, which *typically* involves a manual review of their travel documents by a [CBP Officer]."[22]

22.     The description of alternative screening procedures has similarly changed on CBP's FAQ webpage. Older descriptions on the FAQ webpage indicated that alternative screening meant specifically the review of the traveler's documents for confirmation of identity. For example, on March 6, 2018, the FAQ webpage entry for the question "Are there alternative procedures for those who do not wish to have a photo taken?" read, in relevant part:

> If a U.S. citizen, however, requests not to participate in the Traveler Verification System, specified agreements between CBP and the partner airline or airport

---

[21] U.S. Dep't of Homeland Sec., DHS/CBP/PIA-030(b), *Privacy Impact Assessment Update for the Traveler Verification Service (TVS): Partner Process* 8 (2017), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp030-tvs-may2017.pdf; *see also* U.S. Dep't of Homeland Sec., DHS/CBP/PIA-030(c), *Privacy Impact Assessment Update for the Traveler Verification Service (TVS): Partner Process* 5–6 (2017), https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp030-tvs-appendixb-july2018.pdf (acknowledging that the same alternative, manual screening procedures apply if the TVS fails to verify the identity of a passenger while operated by a commercial air carriers or airport authorities) [hereinafter *Traveler Verification Service PIA (c)*].
[22] *Traveler Verification Service PIA*, *supra* note 6, at 9 (emphasis added).

authority will guide alternate procedures. For some participating airlines, a traveler may request not to participate in the TVS and, instead, present credentials to airline personnel before proceeding through the departure gate. In other cases of an opt-out, an available CBP Officer may use manual processing to verify the individual's identity.[23]

23.     However, as of December 2018, the same FAQ presents manual review of travel documents as *one of the options* CBP may employ for the agency's alternative procedures. The current FAQ on alternative procedures states, "if a U.S. Citizen does not wish to participate in the biometric entry or exit process, he or she must request to be processed using alternate procedures, *such as* presenting travel credentials to an available CBP Officer or authorized airline personnel."[24]

24.     The use of facial recognition for verification of passenger identity is currently implemented in 17 major airports for air exit and in at least 11 major airports for air entry.[25] CBP intends to deploy facial recognition "at all US airports serving international flights" and at all U.S. ports of entry by 2025.[26] Yet, CBP has not published official guidance on alternative screening procedures. Absent adequate notice and public disclosure of official policy on

---

[23] U.S. Customs & Border Prot., *Biometric Exit Frequently Asked Questions (FAQs): Are U.S. Citizens Required to Provide Biometrics for the Entry-Exit System?*, (Mar. 6, 2018), *available at* https://web.archive.org/web/20180306164048/https://www.cbp.gov/travel/biometrics/biometric-exit-faqs.
[24] U.S. Customs & Border Prot., *Are There Alternative Procedures for Those Who Do Not Wish to Have a Photo Taken?*, (Aug. 26, 2018), *available at* https://web.archive.org/web/20180826004935/https://www.cbp.gov/travel/biometrics/biometric-exit-faqs (emphasis added).
[25] U.S. Customs & Border Prot., *Biometrics: Experience It Here*, https://www.cbp.gov/travel/biometrics.
[26] Thom Patterson, *US Airport Opens First Fully Biometric Terminal*, CNN (Dec. 3, 2018), https://www.cnn.com/travel/article/atlanta-airport-first-us-biometric-terminal-facial-recognition/index.html.

alternative screening procedures, CBP will continue to frustrate U.S. travelers' ability to exercise their right to opt-out of the Biometric Entry-Exit program.

## EPIC's FOIA Request

25.     On December 12, 2018, EPIC submitted a FOIA request ("EPIC's FOIA Request") to CBP's FOIA Division via certified mail. The United States Postal Service confirmed delivery of the request on December 17, 2018.

26.     EPIC's FOIA Request sought records related to alternative screening procedures in CBP's Biometric Entry-Exit Program. Specifically, EPIC sought:

1) All records concerning the creation and modification of CBP's "Biometric Exit Frequently Asked Questions (FAQs)" webpage up to and including the changes posted on December 3, 2018;

2) All records concerning the "alternative procedures" described in CBP's "Biometric Exit Frequently Asked Questions (FAQs)" webpage

27.     EPIC sought "news media" fee status under 5 U.S.C. § 552(4)(A)(ii)(II) and a waiver of all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii).

28.     EPIC also sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II).

29.     EPIC received no acknowledgement letter from the CBP.

30.     On February 14, 2019, EPIC called the CBP FOIA office to inquire about the status of the request. The agency could not locate the request and stated that due to a lapse in appropriations from December 2018 to January 2019, the agency is backlogged in inputting requests in the system. EPIC was unable to get a tracking number for the request.

## EPIC's Constructive Exhaustion of Administrative Remedies

31.     Today is the 86th day since CBP received EPIC's FOIA Request.

32.     CBP has failed to make a determination regarding EPIC's FOIA Request for expedited processing within the time period prescribed by 5 U.S.C. § 552(a)(6)(E)(ii)(I).

33.     And CBP has failed to determine EPIC's FOIA Request within the period required by 5

U.S.C. § 552(a)(6)(A)(i).

34.     EPIC has exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

### Count I

### Violation of FOIA: Failure to Comply with Statutory Deadlines

35.     Plaintiff asserts and incorporates by reference paragraphs 1–34.

36.     Defendant CBP has failed to determine EPIC's FOIA Request for 86 days. CBP has

violated the deadlines under 5 U.S.C. §§ 552(a)(6)(E)(ii)(I), (a)(6)(A)(ii).

37.     Plaintiff has constructively exhausted all applicable administrative remedies under 5

U.S.C. § 552(a)(6)(C)(i).

### Count II

38.     **Violation of FOIA: Failure to Grant Request for Expedited Processing**

1.      Plaintiff asserts and incorporates by reference paragraphs 1–34.

2.      Defendant's failure to grant plaintiff's request for expedited processing violated the FOIA,

5 U.S.C. § 552(a)(6)(E)(i).

3.      Plaintiff may have injunctive relief regarding an agency determination on EPIC's request

for expedited processing.

### Count III

### Violation of FOIA: Unlawful Withholding of Agency Records

39.     Plaintiff asserts and incorporates by reference paragraphs 1–34.

40.     Defendant CBP has wrongfully withheld agency records requested by Plaintiff.

41.     Plaintiff has exhausted all applicable administrative remedies under 5 U.S.C. §

552(a)(6)(C)(i).

42.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Count IV

### Claim for Declaratory Relief

43.     Plaintiff asserts and incorporates by reference paragraphs 1–34.

44.     Plaintiff is entitled under 28 U.S.C. § 2201(a) to a declaration of the rights and other legal relations of the parties regarding the claims in Counts I–IV.

## Requested Relief

WHEREFORE, Plaintiff requests this Court:

A.  Order Defendant to immediately conduct a reasonable search for all responsive records;

B.  Order Defendant to take all reasonable steps to release non-exempt records;

C.  Order Defendant to disclose promptly to Plaintiff all responsive, non-exempt records;

D.  Order Defendant to produce the records sought without the assessment of search fees;

E.  Order Defendant to grant EPIC's request for a fee waiver;

F.  Award EPIC costs and reasonable attorney's fees in this action; and

G.  Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

MARC ROTENBERG, D.C. Bar # 422825
EPIC President and Executive Director

ALAN BUTLER, D.C. Bar # 1012128
EPIC Senior Counsel

/s/ Jeramie D. Scott
JERAMIE D. SCOTT, D.C. Bar # 1025909
EPIC Senior Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: March 12, 2019